FIRST COMMERCIAL BANK, Trustee *v.* Duane T.
MEYER, Beneficiary

86-12                                          711 S.W.2d 791

Supreme Court of Arkansas
Opinion delivered June 30, 1986

*Friday, Eldredge & Clark,* by: *A. Wyckliff Nisbet* and *William A. Waddell, Jr.,* for appellant.

*Moses, McCellan & McDermott,* by: *Harry McDermott, III,* for appellee.

DARRELL HICKMAN, Justice. D. T. Construction Company established a profit sharing plan for its employees. The plan was qualified under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. 1001 et seq. Duane T. Meyer, president of the company, was named the plan administrator and First Commercial Bank was named the trustee of the plan. The

plan administrator was authorized to interpret the plan, determining to whom and how the benefits were paid. The trustee was only authorized to follow the written directions of the plan administrator regarding any disbursements from the funds of the plan. The plan provides that only vested employees are entitled to distribution from the trust. It takes 10 years of employment to become 100% vested under the plan. After three years of employment, the employee becomes 30% vested with vesting increasing 10 percent each succeeding year.

In September 1984, Meyer delivered seven notices of termination and employee participation in the plan to the trustee, who at that time was Frank Scherr. Scherr had recently been hired by the bank as trustee. The notices were to identify the status of the employee-participants and note their vested interest in the plan. The notices concerning five employees stated they were zero percent vested, meaning they were not entitled to share in the plan. The other two notices were left blank as to their contributory share. All seven notices of termination stated the reason for termination as dissolution of the corporation. Scherr testified he informed Meyer that in his opinion the employees were automatically 100% vested upon dissolution of the corporation. Scherr said Meyer nodded his head in agreement. Meyer testified that he did not recall nodding. Later, Scherr sent Meyer an allocation report for the fiscal year, showing that four of these seven employees were zero percent vested. But Scherr later concluded these four employees were 100% vested because their termination was due to the corporation being dissolved. He said he tried to call Meyer several times but was unable to reach him. Scherr then mailed withholding election forms to these employees, a requirement by the IRS, prior to distribution of the funds. When the forms were returned, Scherr paid these four individuals a total of $4,758.24 on October 16, 1984.

In November, 1984, one and a half months after Scherr paid these employees, Meyer learned of the disbursement. He and his accountant met with Scherr and explained that these four employees were not laid off because the corporation was dissolving, but that they had voluntarily quit at various times during the last fiscal year. Meyer further explained he did not intend for them to receive any funds because none of them were vested in terms of years of service; that was the reason zero was written on

the form. Scherr wrote the four individuals and requested that the money be returned explaining that the instructions given to the trustee by the plan administrator were misinterpreted, and they were not entitled to the payments since they had quit. None of the employees returned the money and Meyer sued the bank for reimbursement. The trial court held for Meyer finding that the trustee had acted unreasonably under the circumstances.

On appeal the bank asks us to hold as a matter of law that the payments made to the four employees were proper because their interest in the plan had vested upon dissolution of the corporation under ERISA. On the facts before us, we cannot say the chancellor was clearly wrong because evidently Scherr did misinterpret his instructions. That was the judgment of the chancellor. The termination notices stated none of these individuals had any interest in the plan. While the reason given was dissolution, the trustee on his own decided all four employees were vested and should receive their share of the fund. There is no evidence the four employees were terminated because the corporation was to be dissolved. Meyer testified these four employees had quit prior to the adoption of the resolution of dissolution. This testimony was undisputed.

The question before us then is whether the trustee reasonably relied on Meyer's acts, causing the claim to be barred by equitable estoppel. Scherr testified Meyer nodded upon the dissolution of the corporation. Meyer testified that he did not recall nodding his head. The trial court has the responsibility of resolving conflicts in testimony. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985). The chancellor resolved this question of fact in Meyer's favor, and we cannot say the chancellor was clearly wrong.

There is no doubt that both Meyer and Scherr made mistakes which caused the confusion in this case. Meyer was mistaken by stating the reason for termination was dissolution of the corporation when the employees had quit. Scherr erred in disbursing the funds when the notices indicated no funds should be disbursed. Scherr acted without written authority regardless of Meyer's mistake. Scherr wrote a letter requesting the money be returned, stating that the instructions had been misinterpreted. Under these circumstances, the findings of the trial court cannot

be set aside.

■ In the bank's reply brief, it raises for the first time the argument that one of these employees was vested because he had not incurred a break in service before he was terminated. This argument is based on a provision in ERISA. Such an argument cannot be made for the first time on appeal. *Ivey v. Bray*, 278 Ark. 475, 647 S.W.2d 430 (1983).

The appellee's attorney was awarded an attorney's fee pursuant to 29 U.S.C. § 1132 (g) (1). An additional fee of $1,000 is awarded for the appeal.

Affirmed.